```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA
```

SUSIE ANN KNUTSON,            )
                              )
            Plaintiff,        )
                              )
v.                            )       Case No. CIV-14-244-JHP-KEW
                              )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social        )
Security Administration,      )
                              )
            Defendant.        )

## REPORT AND RECOMMENDATION

Plaintiff Susie Ann Knutson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on July 31, 1950 and was 53 years old at the time of the ALJ's decision. Claimant completed her education through the eleventh grade. Claimant has worked in the past as a glove maker and inspector. Claimant alleges an inability to work beginning September 1, 1994 due to limitations resulting from vision problems, vertigo, gait and balance problems, labryinthitis,

3

ataxia, bladder and bowel problems, and fatigue.

**Procedural History**

On June 10, 2002, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. The tortured history of this case has consisted of three prior decisions which resulted in reversal and remand to Defendant for further proceedings. The latest decision came after an administrative hearing was held on January 21, 2014 before Administrative Law Judge ("ALJ") Doug Gabbard, II in McAlester, Oklahoma. On April 11, 2014, the ALJ issued an unfavorable decision on Claimant's application. Claimant declined to seek review by the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in weighing and

4

rejecting the opinions of Claimant's treating physicians.

**Treating Physician's Opinion Evidence**

In his decision, the ALJ determined Claimant suffered from the severe impairments of status post left wrist fracture, labyrinthitis, headaches, and mild osteopenia of the left shoulder. (Tr. 836). The ALJ concluded that Claimant retained the RFC to perform medium work. (Tr. 840). After consultation with a vocational expert, the ALJ also found Claimant could perform her past relevant work as a glove part inspector, as a glove sewer, and as a leather cleaner. (Tr. 848). As a result, the ALJ found Claimant was not disabled from September 1, 1994 through the date of the decision. (Tr. 849).

Claimant contends the ALJ failed to properly consider the opinions of his treating physicians, Dr. Paul Pradel and Dr. Kemal E. Kutait. Dr. Pradel provided an attending physician's statement on July 18, 2003 which provided he had treated Claimant since May 12, 2001. He diagnosed Claimant with dizziness, rule out multiple sclerosis or stroke; hypertension; and hyperlipidemia. (Tr. 188). He stated Claimant's dizziness was triggered by position changes and that her vertigo was also accompanied by headaches. Id. Dr. Pradel found Claimant's condition affected her attention and concentration and ability to tolerate work stress and that they

would require unscheduled breaks, produce good and bad days, and likely result in her absence from work more than for days per month. (Tr. 189). In his medical source statement, Dr. Pradel found Claimant could sit for 30 minutes at a time and for up to four hours in an eight hour workday, stand fifteen minutes at a time for up to two hours of an eight hour workday, walk less than fifteen minutes at a time for up to an hour in an eight hour workday, occasionally lift/carry up to five pounds, use her hands for grasping and fine manipulation, but not pushing and pulling, use her feet for repetitive movements, but could not bend, squat, crawl, climb, reach above her head, stoop, or crouch, could not be exposed to unprotected heights, moving machinery, marked temperature changes, or driving automotive equipment, and only occasionally handle exposure to dust, fumes, gases, and noise. (Tr. 190-92).

The record indicates Dr. Kutait began treating Claimant in October of 1990. On October 20, 2008, Dr. Kutait completed an attending physician's statement, indicating he could not specifically recall when he began treating Claimant but it was in the mid-1990's. (Tr. 431). He diagnosed Claimant with dizziness ro dizziness, rule out multiple sclerosis or stroke; hypertension; hyperlipidemia; and middle ear disease rule out Meniere's. (Tr.

431). He stated Claimant's vertigo was triggered by position changes and that she also experienced headaches. (Tr. 431). He indicated Claimant's condition affected her attention and concentration, ability to tolerate stress, required unscheduled breaks, produced good and bad days, and likely would result in absences from work for more than four days per month. (Tr. 431-32). The form also indicates the conditions described existed on or before December 31, 1999. (Tr. 432).

The ALJ gave Dr. Pradel's opinion "diminished weight" as it was not fully supported by or consistent with the medical record. (Tr. 846). The ALJ states that Dr. Pradel began treating Claimant five months after the date last insured and primarily treated her for chest pains. He cited a lack of clinical or laboratory evidence to support Dr. Pradel's opinions in the record for the period before the date last insured. Id.

The ALJ gave Dr. Kutait's opinion "diminished weight" because it, too, was allegedly not fully supported by or consistent with the medical evidence. (Tr. 847). The ALJ was critical that he had infrequent treating of Claimant, did not treat her for the condition he provided a source statement, that the statement was completed 14 years after his last reported office visit and his findings were inconsistent with his treatment notes. Id.

7

This Court agrees that Dr. Pradel's assessment has little applicability to the issues in this case since it clearly was rendered outside of the relevant time period - after the expiration of the date last insured. Grogan v. Barnhart, 399 F.3d 1257, 1262 (10th Cir. 2005). Nothing in any of the treatment notes nor in the assessment itself would indicate that it applied to the relevant period.

Dr. Kutait's opinion is another matter. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The

factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's recitation of the law is correct but his assessment that Dr. Kutait's opinion does not account for the remainder of the

9

record. Claimant has clearly received treatment from multiple sources which would indicate she suffered from significant dizziness during the relevant period. (Tr. 836-37). If the ALJ has questions regarding Dr. Kutait's treatment or basis for his opinion, he should recontact him to obtain an explanation rather than simply reject his opinion out of hand.

This case has returned on appeal far too many times. On remand, the ALJ should be mindful of this fact and take the necessary steps to ascertain once and for all whether Claimant's vertigo condition limits her to the extent described and endorsed by Dr. Kutait - her treating physician during the relevant time period. Rather than a complete rejection of his source statement, the ALJ should give due consideration to his status as a treating physician.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service

of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of September, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE